IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WHOOPS TRANSPORT, INC.,

Plaintiffs

v.

BLUE RIBBON COMMODITY TRADERS, INC.,

Defendants

v.

JOSE RAMOS ORTIZ individually and d/b/a FRIGORÍFICO RAFO'S and/or RAFO'S SEA FOOD and/or RAFO'S SEA FOOD DISTRIBUTOR; PROGRESO CASH & CARRY; COOPERATIVA DE ISABELA; ALL PACKAGING PRODUCTS & EXPORT, CORP.; QUALITY FOODS DISTRIBUTORS; AND SUPERMERCADOS MR. SPECIAL, INC.,

Garnishees

CIVIL 07-2033 (GAG) (JA)
IN ADMIRALTY RULE B

MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

This matter comes before the court on motion by garnishee Supermercados Mr. Special, Inc. (hereinafter "Mr. Special") requesting that attachment of funds be vacated and said funds be returned to Mr. Special. (Docket No. 38.) Mr. Special argues that the attachment against it should be vacated because it was not served with notice or accorded due process. (<u>Id.</u> at 2.)

Mr. Special's motion has been opposed by plaintiff Whoops Transport, Inc. (hereinafter "Whoops"). (Docket No. 44.) Whoops argues that because it went above and beyond the requirements of Rule B(3)(a) of the Supplemental Rules for

CIVIL 07-2033 (GAG) (JA)                          2

Admiralty or Maritime Claims, Mr. Special cannot claim it was not given notice or afforded due process. (Id. at 6.)

Having considered the arguments of the parties and for the reasons set forth below, I recommend that Mr. Special's motion to vacate and return funds be DENIED.

## I.  BACKGROUND

On October 26, 2007, Whoops filed an admiralty and maritime claim against Blue Ribbon Commodity Traders, Inc. (hereinafter "Blue Ribbon") alleging it refused to pay invoices for several shipments of cargo delivered pursuant to a contract between the two parties. (Docket No. 1, at 2.) Whoops claimed losses amounting to $434,596.56, plus interest, costs and attorney's fees. (Id.) Pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims, Whoops sought maritime attachment and garnishment against Blue Ribbons' assets, which Whoops alleged were in possession of Mr. Special, along with other captioned garnishees. (Id. at 3.) On November 2, 2007, a writ of maritime attachment and garnishment was issued as to the garnishees, including Mr. Special. (Docket No. 9.)

On November 27, 2007, writs of attachment and garnishment were returned as executed by the United States Marshals Service against all the garnishees, including Mr. Special. (Docket No. 14.) The writ issued to Mr. Special specifically shows that "Ernesto Quiñones Martín" was personally served. (Id. at 6.) The writ also shows that interrogatories, filed by Whoops pursuant to Rule B(3)(a) of the Supplemental Rules for Admiralty or Maritime Claims, were attached along with the writ. (Id.; Docket No. 19, at 2, ¶ 2.)

CIVIL 07-2033 (GAG) (JA)				3

On December 7, 2007, garnishees Progreso Cash & Carry and Quality Foods Distributors filed answers to the writs of garnishment and attached interrogatories. (Docket Nos. 15 & 16.) Whoops noted those interrogatories were issued to the garnishees November 6, 2007, and were required to be answered within twenty days, pursuant to Rule B(3)(a). (Docket No. 19, at 2, ¶ 3.) Whoops made special note of the fact that two garnishees, Mr. Special and "Jose Ramos Ortiz individually and d/b/a Frigorífico Rafo's and/or Rafo's Sea Food and/or Rafo's Sea Food Distributor" (hereinafter "Frigorífico") had failed to comply with Rule B(3)(a). (Id. ¶ 5.)

On December 19, 2007, Whoops filed an application for a writ of compulsory garnishment against Mr. Special and Frigorifico. (Docket No. 19.) Whoops alleged it learned Blue Ribbon brought an action against these two garnishees for uncollected sums of $340,382.12 and $128,632.08, respectively. (Id. at 2, ¶ 6.) Whoops requested that compulsory garnishment be ordered as to any property belonging to Blue Ribbon in possession of those garnishees. (Id. at 2-3.) On December 28, 2007, I granted Whoops' motion for compulsory garnishment and ordered that the special master, Fernando Castillo, seize bank accounts and property in the name of Mr. Special in the amount of $340,382.12. (Docket Nos. 24-1, 24-2 & 25.)

On February 20, 2008, Mr. Special filed its motion requesting the attachment be vacated and the funds returned, arguing such attachment was illegal because, alleges Mr. Special, it was not served with notice or accorded due process. (Docket No. 38, at 2, ¶¶ 5-9.) Mr. Special alleges it became aware of the attachment when it was notified of such by its bank, Banco Popular de Puerto Rico. (Id. at 3, ¶ 9.)

CIVIL 07-2033 (GAG) (JA) 4

Mr. Special alleges it is involved in litigation with Blue Ribbon in the Eastern District of Pennsylvania. (Id. at 3, ¶ 10.) Mr. Special alleges that: "In said litigation, Blue Ribbon & Commodity Traders Inc [sic] intends to collect 'Mr. Special' who was not its 'Blue Ribbon' sold merchandise to Quality Foods Inc [sic], who eventually sold the same merchandise to 'Mr. Special'; who paid Quality Foods Inc [sic] all of its invoices." (Id.) In any event, Mr. Special alleges it owes Blue Ribbon no money and will prevail in the action. (Id.)

Mr. Special concluded its motion by stating that the interrogatory served upon it on November 6, 2007, would be answered within the next five days. (Id. at 4, ¶ 10.)

On March 18, 2008, Whoops filed an opposition to Mr. Special's motion, wherein it argues garnishment is appropriate because Mr. Special made no effort to answer the interrogatories included with the writ of garnishment, granting Whoops such garnishment under Rule (B)(3)(a). (Docket No. 44, at 6.) Whoops argues that because it went above and beyond the requirements of Rule (B)(3)(a), Mr. Special cannot argue it was not given due process in the matter. (Id.)

## II.  DISCUSSION

Rule B(1)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides that:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property--up to the amount sued for--in the hands of garnishees named in the process.

Supp. Admiralty & Mar. R. B(1)(a).

CIVIL 07-2033 (GAG) (JA)							5

Rule B(3)(a) provides that:

> The garnishee shall serve an answer, together with answers to any interrogatories served with the complaint, within 20 days after service of process upon the garnishee. Interrogatories to the garnishee may be served with the complaint without leave of court. If the garnishee refuses or neglects to answer on oath as to the debts, credits, or effects of the defendant in the garnishee's hands, or any interrogatories concerning such debts, credits, and effects that may be propounded by the plaintiff, the court may award compulsory process against the garnishee.

Supp. Admiralty & Mar. R. (B)(3)(a).

Mr. Special alleges that "[a] hearing to discuss the motion for attachment of funds did not take place nor was 'Mr. Special' notified as to the filing of such a motion; nor of the above mentioned proceedings." (Docket No. 38, at 2, ¶ 4.)

Mr. Special cannot allege it was not notified of the current proceeding or of the filing of a motion for attachment on behalf of Whoops because the record shows Mr. Special was served with a writ of attachment and garnishment by the United States Marshals Service. (See Docket No. 14.) Because Mr. Special makes no argument as to any defect in service of process, I must assume that such service was effective. See Alan Corp. v. Int'l Surplus Lines Ins. Co., 22 F.3d 339, 343-44 (1st Cir. 1994) (collecting cases) (noting that challenges of a perfunctory manner are deemed waived).

Moreover, Whoops notes that it provided Mr. Special with a letter informing it of the existence of the instant action, how it could voluntarily comply with the order, suggested a course of action before the district court for the Eastern District of Pennsylvania after compliance with the order for attachment and garnishment, suggested Mr. Special consult an attorney, and even invited Mr. Special to contact Whoops. (Docket No. 44-1, at 5; Docket No. 44-2.)

CIVIL 07-2033 (GAG) (JA)                6

Mr. Special cites Connecticut v. Doehr, 501 U.S. 1 (1991), for the proposition that "prejudgment attachment of property without notice to the adverse party and without a hearing are deemed to be unconstitutional in lieu of the violation to the due process clause." (Docket No. 38, at 2, ¶ 5.)

However, as Whoops points out, Connecticut v. Doehr is distinguishable because it was a regular civil action, and the instant case is a maritime action. (Docket No. 44-1, at 8-13.)  Maritime rules are distinct and were developed separate from those regarding civil actions. See Advisory Committee Notes, Supp. Admiralty & Mar. R. A.  Although ex parte attachments have long been held unconstitutional in regular civil actions, see Sniadach v Family Fin. Corp., 395 U.S. 337, 342 (1969), the constitutionality of Rule B as applied to third party debtors has been challenged and upheld in the First Circuit. Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co., 743 F.2d 956, 963 (1st Cir. 1984).

Because Rule B(3)(a) requires that a garnishee answer the writ of garnishment and attachment, along with any included interrogatories, within twenty days of their service, and three months later Mr. Special had answered neither, compulsory garnishment and attachment of its funds was appropriate. See Supp. Admiralty & Mar. R. B(3)(a).

### III.  CONCLUSION

In view of the above, I find that Mr. Special has not shown why the attachment against it should be vacated and those funds returned.  Therefore, it is my recommendation that Mr. Special's motion for such be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of

CIVIL 07-2033 (GAG) (JA)             7

this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Paterson-Leitch v. Massachusetts Elec.</u>, 840 F.2d 985 (1st Cir. 1988); <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4 (1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 21st day of April, 2008.

                                        S/ JUSTO ARENAS
                               Chief United States Magistrate Judge